USDA-FmHA
Form FmHA 440-4
(Rev. 2/83)

SECURITY AGREEMENT
(CHATTELS AND CROPS)

*Original*

I. THIS SECURITY AGREEMENT, dated February 16, 1999, is made between the United States of America acting through the Farmers Home Administration (called Secured Party) and

ADAM S. BOYD                             and

(called Debtor), whose mailing address is

P.O. Box 846 Palmer, AK 99645-0846

II. BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The note evidences a loan to Debtor, and Secured Party at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farmers Home Administration and

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced by the note, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor; and

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made or insured by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farmers Home Administration all with interest, (b) at all times when the note is held by an insured holder, to secure performance of Debtor's agreement in this instrument to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and the performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds and products thereof after this collateral:

FmHA 440-4 (Rev. 2/83)

Item 1.   All crops, annual and perennial, and other plant products now planted, growing,   grown, or which are planted after this instrument is signed or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| FOUR CORNERS-ASCS # | 32 | MAT-SU, AK | Intersection of Palmer-Wasilla Hwy and Truck Road |
| WYATT-ASCS # | 5 | MAT-SU, AK | Mile 3.0 of the Palmer Fishook road |
| BOB BOYD FARM-ASCS # | 10 | MAT-SU, AK | mile 3.5 of the Palmer-Fishook road. |

Including all peanut and tobacco poundage allotments existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the debtors to any subsequent party.

*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.

Item 2.   All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | Year of manufacture | Serial or Motor No. |
|---|---|---|---|---|---|---|---|
| 001 | 1 | TRACTOR | LEYLAND | 270 | Fair | 1980 | 798115 |
| 002 | 1 | HAY TEDDER RAKE | NEW HOLLAND | 254 | Good | 1991 | |
| 003 | 1 | BALER | NEW HOLLAND | 275 | Fair | 1980 | 250444 |
| 004 | 1 | ROTARY MOWER | MCCORMICK | 9FT | Fair | 1980 | 14968 |
| 005 | 1 | WHEEL RAKE | BEFCO | 5 WHEEL | Very Good | 1995 | 154782 |
| 006 | 1 | FORD PICKUP | FORD | F150 | Fair | 1985 | |
| 007 | 1 | PICKUP | FORD | F150 | Fair | 1974 | |
| 008 | 1 | PICKUP | FORD | F250 | Fair | 1978 | |
| 009* | 1 | ATV | SUZUKI | KING QUAD | Excellent | 1997 | |
| 010 | 1 | SEMI TRACTOR | KENWORTH | | Good | | |
| 011 | 1 | 1/4 MILE SIDE ROLL SPRKLR | BUSTER | 1/4 MILE | Good | | |
| 012 | 1 | IRR PUMP W/ DIESEL ENG | DETROIT | | Good | | |
| 013 | 1 | MAIN LINE 1800 FEET TOTAL | 60 PIECES | 6" X 30' | Good | | |
| 014 | 1 | MAIN LINE 600 FEET TOTAL | 20 PIECES | 6" X 30' | Good | | |
| 015 | 1 | RISER PIPELINE | 120 FEET TOTAL | 3" X 30' | Good | | |
| 016 | 1 | MISC SMALL EQUIP & TOOS | VAR | VAR | Good | | |

Any fixture described above is affixed or is to be affixed to the real estate described in Item 1 of this instrument.

Item 3.   All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| Line No. | Quantity | Kind-Sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|---|---|---|---|---|---|---|---|

Exhibit J
Page 2 of 4 pages

Item 4.   All accounts, contract rights and general intangibles, as follows:

III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:
   A.  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

| Holder | Amount | Line No. |
|---|---|---|
| Northland Credit | $3,912 | 009E |

and Debtor will defend the collateral against the claims and demands of all other persons. Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.
   B.  Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument.
   C.  Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations of the Farmers Home Administration. At all times when the note is held by an insured holder, Debtor shall continue to make payments on the note to Secured Party, as collection agent for the holder.
   D.  If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.
   E.  At all times when the note is held by an insured holder, any amount due and unpaid under the terms of the note to which the holder is entitled may be paid by Secured Party to the holder of the note for the account of Debtor. Any amount due and unpaid under the terms of the note, whether it is held by Secured Party or by an insured holder, may be credited by Secured Party on the note and thereupon shall constitute an advance by Secured Party for the account of Debtor. Any advance by Secured Party as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such advance unless otherwise provided in the regulations of the Farmers Home Administration.
   F.  Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.
   G.  All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.
   H.  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require.

IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon any such default,

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.

2. Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3. A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this instrument.

C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

D. It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

E. This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.

F. If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.

G. The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

H. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

I. Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of it.

J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

K. Failure by the Secured Party to exercise any right-whether once or often--shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

_____/s/ Adam S. Boyd_____ (SEAL)    _____ (SEAL)
ADAM S. BOYD          (Debtor)                       (Debtor)

U.S. GOVERNMENT PRINTING OFFICE: 1988-554-052/80002

Exh. J
Page 4 of 4