SECURITY AGREEMENT
(CHATTELS AND CROPS)

I. THIS SECURITY AGREEMENT, dated _____ May 1, 2003 _____ is made between the United States of America acting through the Farm Service Agency (called Secured Party) and

_Adam s. Boyd_ and _____

(called Debtor), whose mailing address is _POBox 846, Palmer Palmer, AK 99645_ .

II. BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and
    The note evidences a loan to Debtor, and Secured Party at any time, may assign the note to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency and
    It is the purpose and intent of this instrument that this instrument shall secure prompt payment of the note and the timely performance of all obligations and convenants contained in this instrument; and
    NOW THEREFORE, in consideration of said loan(s) and (a) to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency all with interest, (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and (c) the timely performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:
    DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (herinafter referred to as "collateral"); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this instrument and the Secured Party's interest therein:

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*

Item 1. All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this instrument is signed or otherwise become growing or harvested crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, including the crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approx. No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| FSA #1<br>Robert Boyd | 55.00 | MATANUSKA-SUSITNA, AK | hay and pat. |
| FSA #60<br>Rocky Goodwin | 60.00 | PALMER, AK | hay and pt |
| FSA #40<br>Anderson | 40.00 | PALMER, AK | p |
| FSA #5<br>Griffen | 5.00 | PALMER, AK | Griffen farm |
| FSA #34<br>Boyd farms | 34.00 | PALMER, AK | Robert Boyd farm |

Including all entitlements, benefits, and payments from all state and federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all peanut and tobacco poundage allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party;

*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.

Exhibit __K__
Page __2__ of __7__ pages

*Item 2.* All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of   :

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | Year of Manufacture | Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | tractor | leylan | 270 | Fair | 1980 | 1769820152 |
| 2 | 1 | hay tedder rake | NH | 254 | Good | 1991 | 798115 |
| 3 | 1 | baler | NH | 276 | Fair | 1980 | 2504444 |
| 4 | 1 | rotary mower | Mccormick | 9 foot | Fair | 1980 | 14968 |
| 5 | 1 | wheel rake | Befco | 5'wheels | Fair | 1995 | 154782 |
| 6 | 1 | semi tractor | Kenworth | | Fair | | |
| 7 | 1 | side roll sprinker | buster | 1/4 mile | Fair | | |
| 8 | 1 | Irr. pump | Detroit | diesel eng | Fair | | |
| 9 | 1 | main line sprinker | | 60 pieces | Fair | | |
| 10 | 1 | main line pipe | | 20 pieces | Fair | | |
| 11 | 1 | riser pipe line | | 120' 3"x | Fair | | |
| 12 | 1 | hiller | | | Excellent | | |
| 13 | 1 | bag tie | | | Excellent | 2003 | |

Including the following described fixtures which are affixed or are to be affixed to real estate; as-extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows (*include legal description of the land*):

*Item 3.*    All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) :

| Line No. | Quantity | Kind-sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|---|---|---|---|---|---|---|---|
| 1 | 3 | horses | grade | ver | | | |

K
Page 4 of 7

*Item 4.*   All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including, but not limited to the following:

2003 potato crop

### III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

  A. Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, Farm and Home Plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

  B. Statements contained in Debtor's loan application(s) and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this instrument, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument, and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

  C. Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations of the Farm Service Agency.

  D. Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

  E. Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this instrument; change that may affect this security interest or its perfection; and any event of default.

  F. Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

K

5 of 7

G. All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H. In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

### IV. IT IS FURTHER AGREED THAT:

A. Until default Debtor may retain possession of the collateral.

B. Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon any such default:

1. Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral.
2. Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory position and redemption rights.
3. A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this instrument.

C. Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farm Service Agency, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to Secured Party, and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

D. It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

Exh" ) K
Pg _6_ of _7_ pages

E. Secured Party may comply with any applicable state or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

F. This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.

G. If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.

H. The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

I. If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

J. SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

K. Failure by the Secured Party to exercise any right-whether once or often-shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

_____ (SEAL)     _____ (SEAL)
Adam S. Boyd            *(Debtor)*                                       *(Debtor)*